906 So.2d 1094 (2004)
HCA HEALTH SERVICES OF FLORIDA, INC., d/b/a Blake Medical Center, Appellant,
v.
Lynn HILLMAN, Mary Patricia Bosner, and Roberta James, Appellees.
Nos. 2D03-1534, 2D03-3349.
District Court of Appeal of Florida, Second District.
December 10, 2004.
Rehearing Denied February 1, 2005.
Marie Tomassi, John E. Johnson, and Laura E. Prather of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, St. Petersburg, for Appellant.
Tricia B. Valles of Hahn, Morgan & Lamb, P.A., Tampa, and Lisa L. Cullaro of Lisa L. Cullaro, P.A., Tampa, for Appellees.
FULMER, Judge.
In this consolidated appeal, HCA Health Services of Florida, Inc., d/b/a Blake Medical *1095 Center (Blake) challenges the final judgment awarding damages to the Plaintiffs Lynn Hillman, Mary Patricia Bosner and Roberta James, who filed a whistleblower action against Blake pursuant to section 448.103, Florida Statutes (2001).[1] In the consolidated case, Blake appeals the final judgment that awarded attorney's fees and costs to the Plaintiffs as prevailing parties pursuant to section 448.104, Florida Statutes (2001).[2] On cross-appeal, the Plaintiffs challenge the trial court's failure to award certain litigation expenses. We reverse the final judgment awarding damages because the trial court erred by applying the doctrine of equitable tolling to allow Plaintiffs to pursue their claim after the statute of limitations period had expired. Our reversal of this judgment requires that we also reverse the final judgment awarding attorney's fees and costs which, in turn, renders the cross-appeal moot.
The Plaintiffs were critical care nurses in Blake's Intensive Care Unit. Beginning in 1998 and continuing through May 1999, they began to complain to their supervisors about deficient nursing care. Because of subsequent disciplinary action taken by their supervisors, the Plaintiffs retained counsel to file a whistleblower action pursuant to section 448.103, which authorizes an aggrieved employee who has been the object of retaliation to institute a civil action in a court of competent jurisdiction within two years of discovering the alleged retaliatory personnel action or within four years after the personnel action was taken, whichever is earlier. See § 448.103(1)(a). In their complaint, Plaintiffs alleged causes of action that could have accrued no later than May 27, 1999, for Bosner and James, and no later than July 2, 1999, for Hillman. Plaintiffs filed the underlying action on July 9, 2001. Blake filed a motion to dismiss or in the alternative for summary judgment based on the statute of limitations.
In response to Blake's motion, the Plaintiffs filed no affidavits. Instead, they argued that the doctrine of equitable tolling should be applied to allow the Plaintiffs to pursue their claims notwithstanding the fact that their complaint was filed after the limitations period had expired. As defined in Machules v. Department of Administration, 523 So.2d 1132, 1134 (Fla.1988), this doctrine accommodates "both a defendant's right not to be called upon to defend a stale claim and a plaintiff's right to assert a meritorious claim when equitable circumstances have prevented a timely filing." Machules further explains:
The doctrine of equitable tolling was developed to permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a limitations period.... Equitable tolling... "`focuses on the plaintiff's excusable ignorance of the limitations period and on [the] lack of prejudice to the defendant.'"
....
Generally, the tolling doctrine has been applied when the plaintiff has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum.
Id. at 1133-34 (citations and footnote omitted). In this case, the Plaintiffs contend that the doctrine should be applied because they timely asserted their rights in the wrong forum and were thereafter lulled into inaction.
Prior to filing any lawsuits, Plaintiffs' counsel sent a letter dated February 2, *1096 2000, addressed to both the chief executive officer of Blake Medical Center in Bradenton, Florida, and the Chairman and CEO of Columbia/HCA Health Care Corporation (Columbia HCA) in Nashville, Tennessee. The letter threatened suit and included a draft complaint with the caption: "In the Twelfth Judicial Circuit in and for Manatee County, Florida, Civil Division, Lynn Hillman, Mary Patricia Bosner and Roberta James, Plaintiffs, v. Columbia/HCA Healthcare Corporation d/b/a Blake Medical Center, Defendant." The record does not disclose how the Plaintiffs initially concluded that Columbia HCA was the legal entity they should sue. However, Plaintiffs have never suggested that Blake played any role in their naming of Columbia HCA as the defendant they intended to sue.[3]
Blake responded by letter dated February 24, 2000, in which it addressed in detail the allegations in the draft complaint and stated that "Blake Medical Center" will vigorously defend against the allegations. "Columbia HCA" is never mentioned in the body of the letter. A footnote on the first page of the letter states: "Columbia/HCA Healthcare Corporation does not do business as Blake Medical Center. Blake Medical Center is owned and operated by HCA Health Services of Florida, Inc."
On September 19, 2000, contrary to their expressed intention to file suit in state court, the Plaintiffs filed their suit in federal court. Although the allegations in the complaint were substantively identical to those in the draft state court complaint, the named defendant was changed to "HCA Health Services of Florida, Inc., d/b/a Blake Medical Center." Blake answered the federal court complaint and denied the jurisdictional allegations, denied that it was a foreign corporation, and raised, as a fourth affirmative defense, lack of subject matter jurisdiction. In March 2001, Blake answered Plaintiff Hillman's first set of interrogatories, and in its response to the interrogatory seeking the factual basis of Blake's affirmative defenses, Blake stated that "HCA Health Services of Florida, Inc., is a Florida corporation doing business as Blake Medical Center." On July 5, 2001, Blake moved to dismiss the federal court action based on the absence of subject matter jurisdiction, and on September 25, 2001, that action was dismissed with prejudice. On July 9, 2001, Plaintiffs filed the underlying action in the Twelfth Judicial Circuit, Manatee County, Florida, in response to which Blake filed its motion to dismiss based on the statute of limitations.
At the hearing on Blake's motion to dismiss based on the statute of limitations, Blake argued that, according to Machules, equitable tolling focuses on a plaintiff's "excusable ignorance," which is not present in this case because the Plaintiffs filed their federal court action after ignoring what Blake told them about its ownership and then ignored Blake's answer, affirmative defense, and response to interrogatories.
Counsel for the Plaintiffs began her response to Blake's arguments by stating: "I'm not going to represent that there wasn't an error here by the attorneys. I think that's clear that there was a mistake made."[4] By way of explaining the background *1097 of what happened, counsel directed the trial court's attention to the Plaintiffs' February 2, 2000, letter, stated that Plaintiffs informed "HCA" of their intent to sue,[5] and also pointed out that the caption on the attached draft complaint named "Columbia HCA Health Corporation, Blake Medical Center" as the intended defendant. She explained that the attorneys for "HCA Columbia" sent a letter back indicating that they disagreed with the allegations and that they would defend the action if necessary.[6] Counsel concluded her explanation of the filing mistake by stating:
I think it's undisputed in the record, as counsel for defendant has stated, that the plaintiffs believed there was diversity jurisdiction in this case, given the nature of the defendants, which are named in the pleading.
As it turned out, I think it's also undisputed that we were wrong.
Counsel next responded to Blake's argument that Plaintiffs had ignored Blake's answer and affirmative defenses by asserting that the answer and affirmative defenses were "boilerplate." Counsel stated: "to the extent [the defenses] didn't raise a red flag, perhaps they should have. They didn't because they were boilerplate defenses." Counsel then addressed Blake's interrogatory answers, in which Blake was asked to describe with particularity the factual basis for the seven affirmative defenses:
And the first sentence does say, "Defendant HCA Health Services of Florida, Inc., is a Florida Corporation doing business as Blake Medical Center." ... Judge, nowhere in this paragraph does it say that Defendant HCA Health Services, a Florida Corporation, and you've sued us in the wrong court or the court that we're presently in lacks subject matter jurisdiction.
Relying on Machules, counsel argued that equitable tolling was appropriate in this case because prior to the expiration of the limitations period, Plaintiffs filed an identical action in federal court based on a mistaken assertion of diversity of citizenship and Blake lulled Plaintiffs into inaction by failing to timely raise the federal court's lack of subject matter jurisdiction while knowing it was an improper forum.[7] Counsel further argued that tolling is permitted "even if the attorneys are inept."
*1098 At the conclusion of the hearing, the trial court announced that although it found nothing in Blake's argument to disagree with, there is "no reason to turn this case into a legal malpractice case" when the Plaintiffs diligently pursued their claim and Blake's answer lulled Plaintiffs' lawyers into believing they were in the right court. Thus, the trial court denied Blake's motion and allowed the case to proceed to trial, where the jury returned a verdict in favor of the Plaintiffs. We conclude that the trial court erred by applying the doctrine of equitable tolling in this case and, therefore, reverse.
On appeal, Plaintiffs continue to rely on Machules to support the trial court's application of the doctrine of equitable tolling. We conclude that Machules does not support the trial court's tolling of the statute of limitations in this case, and we decline to expand its holding to provide that support. In Machules, the supreme court entertained a certified question to consider whether the equitable tolling doctrine espoused in federal administrative law decisions could be applied to toll the time for seeking review in a Florida administrative proceeding. 523 So.2d at 1133. The court examined the general rules of the doctrine and the context in which it had been applied by the federal courts and concluded that, on the facts of the case before it, the doctrine could be applied to extend a time limit for seeking review under an administrative rule because the pro se petitioner had timely raised his claim in the wrong forum and had been misled or lulled into inaction by his employer. Id. at 1135-37. Thus, Machules laid the predicate for applying the doctrine of equitable tolling in administrative law cases.[8] However, it did not address application of the doctrine to toll a statute of limitation governed by the provisions of chapter 95, Florida Statutes. And, Plaintiffs have cited no case in which the supreme court has applied the doctrine outside of administrative actions.
Our decision not to expand Machules beyond the administrative law context is grounded primarily on the expression of legislative intent found in section 95.051, Florida Statutes (2001), and the deference our supreme court has given to that expressed intent. Section 95.051(1) enumerates eight circumstances under which the running of the time under any statute of limitations is tolled.[9] Absent from this list of eight circumstances is the timely filing of a claim in the wrong forum. Furthermore, section 95.051(2) expressly precludes the use of any tolling provision not listed: "No disability or other reason shall toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law." Thus, the legislature has made clear its intent to exclude all tolling exceptions not listed in the statute.
We also find it significant that, unlike the majority of states, Florida has chosen not to adopt a "savings statute" that allows a plaintiff whose case has been dismissed otherwise than on the merits to pursue the action even though the statute of limitations has run. See generally C.T. Drechsler, Annotation, Statute Permitting *1099 New Action After Failure of Original Action Commenced Within Period of Limitation, As Applicable In Cases Where Original Action Failed For Lack of Jurisdiction, 6 A.L.R.3d 1043 (2004). As a general rule, such statutes permit suits dismissed from federal court for lack of jurisdiction to be reinstituted in the proper state court notwithstanding the expiration of the limitations period. The Plaintiffs argue that the failure of the Florida Legislature to adopt a savings statute is of no significance because in Florida the state constitution gives the judiciary, not the legislature, the power to establish rules for the transfer of cases from a court without jurisdiction to a court with jurisdiction. See Art. V, § 2(a), Fla. Const. The Plaintiffs also recognize that the Supreme Court of Florida has not adopted a rule that addresses an action improvidently filed in federal rather than state court, but they argue that the supreme court essentially adopted a common law rule in Machules by recognizing that the doctrine of equitable tolling may permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a limitations period.
As we have already noted, Machules applied the doctrine of equitable tolling in an administrative proceeding, not a circuit court civil action. We are not persuaded that our supreme court would allow the doctrine to be applied in civil action such as the Plaintiffs'. We base our conclusion on two decisions in which the supreme court declined to create additional tolling exceptions to those listed in the statute and instead deferred to the legislative directive that there be no tolling exceptions other than those declared by the legislature: Hearndon v. Graham, 767 So.2d 1179 (Fla.2000), and Major League Baseball v. Morsani, 790 So.2d 1071 (Fla.2001).
In Hearndon, the supreme court was asked to consider the certified question of whether a recent decision of the supreme court precluded judicial recognition of an exception to or a tolling of the statute of limitations based upon the doctrine of delayed discovery. The First District had held that the statute of limitations was not tolled by the delayed discovery doctrine in light of the fact that in section 95.051(1) the legislature provided explicit tolling provisions that did not include delayed discovery due to lack of memory. Hearndon v. Graham, 710 So.2d 87 (Fla. 1st DCA 1998). The First District concluded that it was "constrained to [reach this holding] by the recent opinion of the Florida Supreme Court in Fulton County Admin. v. Sullivan, 753 So.2d 549 (Fla.1999) (rehearing pending)," in which the supreme court considered whether statutes of limitations in civil actions are tolled by the fraudulent concealment of the identity of the defendant. Hearndon, 710 So.2d at 90. The First District noted that "[t]he Sullivan court ruled that, because section 95.051(2), Florida Statutes (1985) `specifically precludes application of any tolling provision not specially provided for by the legislature,' Florida courts cannot recognize a basis for tolling the statute of limitations not specifically established by the Legislature." Id. (citations omitted).
By the time the question certified by the First District reached the supreme court, the supreme court had reconsidered its original Sullivan opinion and rendered a decision on rehearing, Fulton County Administrator v. Sullivan, 753 So.2d 549 (Fla.1999), determining that the limitations period of a foreign jurisdiction applied. Thus, the discussion of Florida's statute of limitations in the original Sullivan opinion was no longer applicable and was not included in the supreme court's Sullivan opinion issued on rehearing. Consequently, in Hearndon, the supreme court rephrased the question certified by the First District and addressed whether the doctrine *1100 of delayed discovery could postpone the accrual of a cause of action rather than toll a statute of limitations.[10] 767 So.2d at 1181.
In answering the question, the supreme court discussed the doctrine of delayed discovery and recognized the confusion the court had created in its application of the delayed discovery doctrine by sometimes stating that the doctrine delayed the "accrual" of the cause of action and at other times stating that the doctrine affected the "tolling" of the statute of limitations. Id. at 1185. Based on the distinction between "accrual" and "tolling," the court held that the delayed discovery doctrine may only be applied to the accrual of a cause of action. Id. at 1186. In its discussion, the court observed that in section 95.051(1) the legislature enumerated specific grounds for tolling limitations periods but did not include delayed discovery due to lack of memory. Id. at 1185. The court also noted that section 95.051(2) specifically precludes application of any tolling provision not provided in subsection (1). Id. The court concluded:
In light of the above distinction, we recognize that the Legislature limited the justification for tolling limitation periods to the exclusion of delayed discovery due to loss of memory, but did not likewise limit the circumstances under which accrual may have been delayed. We therefore recede from our past decisions that applied the delayed discovery doctrine to toll the running of a statute of limitation. The Florida Statutes do not impede, however, the delay of the accrual of a cause of action.
Id. at 1185 (footnote omitted).
In Major League Baseball v. Morsani, 790 So.2d 1071, 1075 (Fla.2001), the supreme court once again addressed section 95.051 when the court was asked whether the statute prohibited application of the doctrine of equitable estoppel to an action filed outside of the applicable statute of limitations. The court held that although section 95.051(1) "delineates an exclusive list of conditions that can `toll' the running of the statute of limitations," id. at 1075 (emphasis added), it does not prohibit application of the doctrine of equitable estoppel because equitable estoppel is a common law doctrine that "does not `toll' anything," id. at 1077. Implicit in the court's holding is the conclusion that in order for a doctrine to "toll" the statute of limitations, it must be included in the exclusive list of conditions set forth in section 95.051(1).
We find these cases to be persuasive authority in support of our conclusion that the doctrine of equitable tolling is not available to toll the running of the statute of limitations in this civil action. We also acknowledge one case, cited by Blake, in which the Third District declined to apply the doctrine in a personal injury action. In Wilkin v. Carnival Cruise Lines, Inc., 661 So.2d 1308 (Fla. 3d DCA 1995), the plaintiff was injured on a cruise ship. The ticket contract specified a one-year statute of limitations and Florida as the applicable forum for suit. Id. at 1309. The plaintiff timely filed suit in a Michigan court. Id. Approximately eight months later, the Michigan court dismissed the complaint for lack of jurisdiction based on the forum selection clause in the ticket contract. Id. Several days prior to the Michigan court's dismissal, the plaintiff filed an untimely complaint in a Florida court. Id. The plaintiff argued in the Florida trial court *1101 that the doctrine of equitable tolling should be applied because the plaintiff timely asserted her rights, mistakenly, in the wrong forum. Id. The trial court determined that the plaintiff should be held to the terms of the ticket and that filing suit in the improper forum did not toll the one-year limitation. Id. Without discussion, the Third District found "no error in the trial judge's decision" and affirmed the summary judgment entered in favor of the cruise line. Id. Given the sparse facts and lack of discussion by the appellate court in Wilkin, we did not find it to be a sufficient precedent, in and of itself, upon which to base our reversal. Nevertheless, we agree with the result which is consistent with the conclusion we reach in this case.
Because Plaintiffs' action is barred by the statute of limitations, we reverse the final judgment awarding damages and remand for entry of judgment in favor of Blake. We also reverse the final judgment awarding attorney's fees and costs.
Reversed and remanded for further proceedings as directed.
VILLANTI and CANADY, JJ., Concur.
NOTES
[1] Case No. 2D03-1534
[2] Case No. 2D03-3349
[3] Plaintiffs' counsel conceded that the doctrine of equitable estoppel, which requires active deception or misconduct, does not apply in this case. "Equitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct." Major League Baseball v. Morsani, 790 So.2d 1071, 1077 (Fla.2001).
[4] The mistake counsel was referring to was the fact that the complaint was initially filed in federal court as a diversity action when there was no basis for diversity jurisdiction. In the hearing on attorney's fees, counsel for the Plaintiffs explained that she looked at the corporate documents for HCA Health Services of Florida, Inc., which were available on the Secretary of State's web site, but mistakenly concluded that it was a foreign corporation.
[5] Plaintiffs' letter is addressed to both HCA/Columbia in Nashville, TN, and Blake Medical Center in Bradenton, FL.
[6] The letter states that "Blake Medical Center" will vigorously defend the allegations.
[7] Even though Plaintiffs concede that equitable estoppel does not apply, they cite to 84 Lumber Co. v. Cooper, 656 So.2d 1297 (Fla. 2d DCA 1994), and argue that Blake had an ethical obligation to raise the issue of lack of subject matter jurisdiction after it became apparent by immediately filing a motion to dismiss. We agree with this court's comments in 84 Lumber regarding an attorney's ethical obligations, but 84 Lumber does not provide a legal basis for applying the doctrine of equitable tolling in this case because it does not address equitable tolling at all. Neither does 84 Lumber address the competing ethical obligations of counsel to the court and to counsel's own client in factual circumstances like those we find here where counsel provided correct information to opposing counsel in presuit correspondence, engaged in no fraud or misrepresentation and timely served an answer, affirmative defenses and responses to interrogatories; all of which should have placed opposing counsel on notice that diversity jurisdiction did not exist.
[8] See, e.g., Haynes v. Pub. Employees Relations Comm'n, 694 So.2d 821 (Fla. 4th DCA 1997)(remanding for agency to conduct hearing to determine whether employee's claims justify application of doctrine of equitable tolling); Abusalameh v. Dep't of Bus. Regulation, 627 So.2d 560 (Fla. 4th DCA 1993)(applying doctrine where there was confusion regarding hearing date); Stewart v. Dep't of Corr., 561 So.2d 15 (Fla. 4th DCA 1990)(holding that trial court erred in failing to apply doctrine of equitable tolling to allow employee to appeal his dismissal).
[9] Section 95.051(1) contains exceptions to these tolling provisions that are not relevant here.
[10] The rephrased certified question is:

WHERE A PLAINTIFF IN A TORT ACTION BASED ON CHILDHOOD SEXUAL ABUSE ALLEGES THAT SHE SUFFERED FROM TRAUMATIC AMNESIA CAUSED BY THE ABUSE, DOES THE DELAYED DISCOVERY DOCTRINE POSTPONE ACCRUAL OF THE CAUSE OF ACTION?